## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| NATIONAL INTERSTATE INSURANCE COMPANY, an Ohio corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 22-cv-3188 |
| VICKI MOORE as Independent Administrator of the Estate of SEAN B. RICHIE, *Deceased*, et al. | ) ) ) ) | |
| Defendants. | ) ) | |

## OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE:**

Before the Court is Plaintiff National Interstate Insurance Company's Motion for Summary Judgment (d/e 52).  The motion (d/e 52) is DENIED because genuine disputes of material fact exist regarding whether Plaintiff's insurance policy provides coverage to Defendant Frazier.

## I.    INTRODUCTION

On September 19, 2022, Plaintiff National Interstate Insurance Company ("National Interstate") brought this action for a declaratory judgment pursuant to the Federal Declaratory

Judgment Act, 28 U.S.C. § 2201 <u>et seq.</u>, seeking a judicial determination concerning the scope and nature of its rights and duties between Plaintiff National Interstate and Defendants Vicki Moore, as Independent Administrator of the Estate of Sean B. Richie, Deceased ("Moore"); Jaylen Richie, a minor, by and through his parent and next of friend, Erin Elmore-Thompson ("Thompson"); Ladeja Frazier; Tatiyana A. Rambo; US Choice Auto Rental Systems ("US Choice"); and Urgent Rent-A-Car, LLC ("Urgent Rent-A-Car"), arising out of a motor vehicle accident that occurred on March 2, 2020 at the intersection of 19th Street and East Laurel Street in Springfield, Sangamon County, Illinois. <u>See</u> d/e 1. The motor vehicle accident is the subject of a lawsuit filed in the Circuit Court of Sangamon County, Illinois, Case No. 2020 L 000248 ("The Richie Lawsuit"). <u>See</u> d/e 1, Ex. A. Plaintiff National Interstate seeks a declaration that it does not owe coverage, including a duty to investigate, defend, indemnify, or pay judgments/settlements, on behalf of Defendant Frazier in The Richie Lawsuit. <u>Id.</u>

On November 27, 2023, the Court entered an entry of default against Defendants Urgent Rent-A-Car, Frazier, and Rambo. <u>See</u> d/e 42. On December 14, 2023, the Court entered default

judgment against Defendants Urgent Rent-A-Car, Frazier, and Rambo.  <u>See</u> d/e 50.  The Court ordered that Defendants Frazier, Rambo, and Urgent Rent-A-Car are to be bound by any final order in this Declaratory Judgment action.  <u>Id.</u>

On April 19, 2024, Plaintiff National Interstate filed the instant Motion for Summary Judgment.  <u>See</u> d/e 52.  Plaintiff National Interstate seeks a declaration that it does not have a duty to investigate, defend, indemnify, and/or pay judgments and/or settlements for Defendant Frazier in connection with the March 2, 2020 accident.  <u>Id.</u>  On May 24, 2024, Defendants Moore and Thompson filed their response.  <u>See</u> d/e 55.  On June 7, 2024, Plaintiff National Interstate filed its reply.  <u>See</u> d/e 57.

## II.   JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332 for diversity of citizenship.  Plaintiff National Interstate, a corporation incorporated in Ohio with its principal place of business in Ohio, brought this action for a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 <u>et seq.</u>  <u>See</u> d/e 1, ¶¶ 1, 25.  At all times relevant to this action, Defendants Moore, Thompson, Frazier, and Rambo were

residents and citizens of the state of Illinois.  Id. at ¶¶ 2–5.
Defendant US Choice is a corporation incorporated in Pennsylvania
with its principal place of business in Valley Forge, Pennsylvania.
Id. at ¶ 6.  Defendant Urgent Rent-A-Car is an Illinois limited
liability company whose sole member is a citizen of Illinois.  The
citizenship of a limited liability company for diversity purposes is
the citizenship of each of its members. See Belleville Catering Co. v.
Champaign Mkt. Place, L.L.C., 350 F.3d 691, 692 (7th Cir. 2003).
Complete diversity therefore exists between the parties, and the
amount in controversy exceeds $75,000.  See d/e 1, ¶ 11; 28 U.S.C.
§ 1332.  Venue is proper because a substantial part of the events
giving rise to the claim occurred in this judicial district.  See 28
U.S.C. § 1391(b)(2).

A federal court, when sitting in diversity jurisdiction, applies
the substantive law of the state where it is located.  Nat'l Am. Ins.
Co. v. Artisan & Truckers Case. Co., 796 F.3d 717, 723 (7th Cir.
2015).  Because the Court has diversity jurisdiction over this action
and is sitting in Illinois, and because neither party has provided
any indication that a different state's law should apply, Illinois

substantive law and federal procedural law apply.  <u>Hahn v. Walsh</u>, 762 F.3d 617, 629 (7th Cir. 2014).

## III.   FACTS

The Court draws the following facts from the parties' Local Rule 7.1(D)(1)(b) statements of undisputed material facts.  The Court discusses any material factual disputes in its analysis. Immaterial facts or factual disputes are omitted.  Any fact submitted by any party that was not supported by a citation to evidence will not be considered by the Court.  <u>See</u> Civil LR 7.1(D)(2)(b)(2).  In addition, if any response to a fact failed to support each allegedly disputed fact with evidentiary documentation, that fact is deemed admitted.  <u>Id.</u>

### A. The Insurance Policy

Plaintiff National Interstate issued a Business Auto Coverage Form under policy number GMA 2201664 00 to Defendant US Choice, the Named Insured, with effective dates of September 12, 2019 to April 1, 2020.  d/e 52 at ¶ 37.  Defendant Urgent Rent-A-Car is listed as an Additional Named Insured under the policy.  <u>Id.</u> at ¶ 38.  Plaintiff National Interstate insurance policy's Business Auto Coverage Form states: "Throughout this policy the words 'you'

and 'your' refer to the Named Insured shown in the declarations."

Id. at ¶ 39.  The Business Auto Coverage Form provides in part:

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."
\* \* \*
We have the right and duty to defend any "insured" against a "suit" asking for such damages . . . However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" . . . to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

Id. at ¶ 40.  Plaintiff National Interstate's policy also contains a

Business Auto Coverage Endorsement – Illinois, which modifies the

Business Auto Coverage Form in part:

**BUSINESS AUTO COVERAGE ENDORSEMENT – ILLINOIS.**

**The following replaces the entire provisions of SECTION II – COVERED AUTOS LIABILITY COVERAGE - A COVERAGE, 1. WHO IS AN INSURED.**

A. COVERAGE

> 1. WHO IS AN INSURED.
> The following are insureds.
> a. You are an insured for any covered auto.
> * * *
> c. If the Named Insured is designated in the declarations as a corporation, the corporation and an executive officer or director thereof while acting within the scope of his duties as such;
> * * *
> f. The rentee subject to all conditions set forth in this endorsement and any other person authorized by the rental agreement held by the rentee.

Id. at ¶ 41.   The Business Auto Coverage Endorsement – Illinois also includes certain exclusions:

> **The following is added to the provisions of SECTION IV – BUSINESS AUTO CONDITIONS, B. GENERAL CONDITIONS, 5. OTHER INSURANCE.**
>
> The insurance provided by this policy for the rentee is subject to the terms, conditions, restrictions and limitations contained in the rental agreement, provided that our limit of insurance under "Liability Coverage" cannot be and is not enlarged or expanded beyond the limit shown on the declarations page attached to this policy.

Id. at ¶ 42.   The Business Auto Coverage Endorsement – Illinois defines "Rentee" as the "holder of a rental agreement with you which provides for the holder's use of an automobile for a period of less than one year." Id. at ¶ 44.

Plaintiff National Interstate also issued a Commercial Excess Liability Policy under policy number GXX 2201664 00 to Defendant US Choice with effective dates of September 12, 2019 to April 1, 2020. Id. at ¶ 45. A Single Interest Endorsement modifies the Commercial Excess Liability Policy by providing the following exclusion:

> **The following exclusion is added to SECTION I – COVERAGES, 2. EXCLUSIONS.**
>
> 2. EXCLUSIONS
> The exclusions applicable to the Underlying Insurance also apply to this insurance. Additionally, this insurance does not apply to:
>
> g. The rentee or any ultimate net loss, claim, occurrence, accident, loss, damage or liability imposed upon such rentee when such ultimate net loss, claim, occurrence, accident, loss, damages or liability arises out of the use, possession, or control of a covered auto by such a rentee.

Id. at ¶ 46. The Limits of Insurance endorsement also limits the Commercial Excess Liability Policy as follows: "The actual amount available under Section III of the Policy for the payment of damages is the difference between Limit(s) show in Item 2 – Limits of Insurance and Item 3 - Underlying Insurance." Id. at ¶ 47.

**B. The Incident**

On March 2, 2020, Defendant Urgent Rent-A-Car rented a 2007 Pontiac G6 to Defendant Rambo for the rental period from March 2, 2020 to March 9, 2020 pursuant to a Vehicle Rental Agreement.  Id. at ¶¶ 13, 14, 16.  Defendant Urgent Rent-A-Car owned the Pontiac G6.  Id. at ¶ 12.

On March 2, 2020, Defendant Rambo drove the Pontiac G6 to the address where she was living with Defendant Frazier.  Id. at ¶ 18.  Defendant Frazier subsequently drove the Pontiac G6 to pick up her cousin and nephew up from the intersection of South Grand Ave and Martin Luther King Drive.  Id. at ¶ 21.  While Defendant Frazier was driving the Pontiac G6, she noticed a police officer behind her.  Id. at ¶ 22.  The officer turned on his lights and tried to pull Defendant Frazier over.  Id. at ¶ 23.  Defendant Frazier refused to stop the Pontiac G6.  Id. at ¶¶ 24–25.  Defendant Frazier did not intend to pull over because she did not know why the officer was going to pull her over, despite pleas from her passengers to stop. Id. at ¶ 25.  While the police officer was behind Defendant Frazier, Defendant Frazier failed to stop at the first two stop signs and only slowed down at a third stop sign.  Id. at ¶¶ 26–27.  Defendant Frazier failed to stop at the stop sign at the intersection of 19th

Street and East Laurel Street and hit the vehicle operated by Sean B. Richie.  Id. at ¶¶ 9, 11, 28.  Defendant Frazier was speeding, traveling about 45 to 50 mph, at the time of the accident.  Id. at ¶ 29.  The impact caused the vehicle operated by Sean B. Richie to flip upside down, resulting in bodily injuries.  Id. at ¶¶ 9, 30.

## IV.   LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists if a reasonable trier of fact could find in favor of the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Carroll v. Lynch, 698 F.3d 561, 564 (7th Cir. 2012).  When ruling on a motion for summary judgment, the Court must construe facts in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor.  Woodruff v. Mason, 542 F.3d 545, 550 (7th Cir. 2008).  "At summary judgment, 'a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.'"

Paz v. Wauconda Healthcare & Rehab. Ctr., LLC, 464 F.3d 659, 664
(7th Cir. 2006).

The movant bears the initial responsibility of informing the
Court of the basis for the motion and identifying the evidence the
movant believes demonstrates the absence of any genuine dispute
of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986);
Modrowski v. Pigatto, 712 F.3d 1166, 1168 (7th Cir. 2013)
(explaining that Rule 56 "imposes an initial burden of production on
the party moving for summary judgment to inform the district court
why a trial is not necessary" (internal citation omitted)).  After the
moving party does so, the non-moving party must then go beyond
the pleadings and "set forth specific facts showing that there is a
genuine issue for trial."  Anderson, 477 U.S. at 255 (quotation and
footnotes omitted).

## V.   ANALYSIS

As an initial matter, the Court notes that Illinois case law
recognizes that a *per se* rule that the "insurer of a vehicle, rather
than that of the driver, must always provide primary coverage
makes no sense in the context of rental cars."  State Farm Mut.
Auto. Ins. Co. v. Hertz Claim Mgmt. Corp., 789 N.E.2d 407, 412 (Ill.

App. Ct. 2003).  However, no party advances an argument shifting primary coverage from Plaintiff National Interstate (the insurer) to Defendants Frazier or Rambo.  As a result, the Court proceeds with its analysis assuming that Plaintiff National Interstate has primary coverage.

### A. There Is a Genuine Dispute of Material Fact Whether Defendant Frazier is an "Insured" Under Plaintiff National Interstate's Insurance Policy.

Plaintiff National Interstate argues that Defendant Frazier is not an "insured" under its insurance policy issued to Defendant US Choice.  An insurer's duty to defend arises when two elements are satisfied: (1) an action is brought against an insured, and (2) the allegations of the complaint disclose the potential for policy coverage.  Ill. Ins. Guaranty Fund v. Chi. Ins. Co., 25 N.E.3d 669, 675 (Ill. App. 2015).  To determine the scope of the policy, traditional principles of contracts interpretation apply.  See Murbach v. Noel, 798 N.E.2d 810, 812 (Ill. 2003).  "Under Illinois law, the goal of contract interpretation is to ascertain the parties' intent and, in doing so, we first look to 'the plain and ordinary meaning' of the contract language."  Selective Ins. Co. of South Carolina v. Target Corp., 845 F.3d 263, 267 (7th Cir. 2016) (quoting

Aeroground, Inc. v. CenterPoint Props. Tr., 738 F.3d 810, 813 (7th

Cir. 2013)).  "Interpreting a contract requires an examination of the

complete document and not an isolated part or parts." Young v.

Allstate Ins. Co., 812 N.E.2d 741, 748 (Ill. App. Ct. 2004).  If the

contract language is ambiguous, courts strictly construe the policy

against the insurer and in favor of the insured.  Trotter v.

Harleysville Ins. Co., 821 F.3d 916, 918 (7th Cir. 2016).  A provision

is ambiguous "only when it is susceptible to more than one

reasonable interpretation." Id.  Plain language of an insurance

policy will be enforced unless it violates public policy.  Hobbs v.

Hartford Ins. Co., 823 N.E.2d 561, 564 (Ill. 2005).

　　　The Business Auto Coverage Form Endorsement—Illinois,

which modifies the Business Auto Coverage Form, provides, in

relevant part that:

> 1. WHO IS AN INSURED.
> The following are insureds.
> a. You are an insured for any covered auto.
> * * *
> c. If the Named Insured is designated in the
> declarations as a corporation, the corporation and
> an executive officer or director thereof while acting
> within the scope of his duties as such;
> * * *

> f. The rentee subject to all conditions set forth in this endorsement and any other person authorized by the rental agreement held by the rentee.

d/e 52, ¶ 40; Ex. 2, pp. 11–12, 47.  The parties disagree about whether Defendant Frazier is an "insured" under Plaintiff National Interstate's insurance policy.  Plaintiff National Interstate argues that because the Named Insured and the Named Additional Insured in its insurance policy are Defendants US Choice Auto and Urgent Rent-A-Car, respectively, Defendant Frazier may only be an "insured" if she is a "rentee" as defined by the insurance policy.  d/e 52, p. 10.  "Rentee" is defined as the "holder of a rental agreement with you which provides for the holder's use of an automobile for a period of less than one year."  d/e 52, Ex. 2, p. 49.  Plaintiff National Interstate further argues that because Defendant Rambo was the only "rentee," Defendant Frazier is not an "insured."  d/e 52, p. 10.  On the other hand, Defendants Moore and Thompson argue that Defendant Frazier was a "permitted user" and thus required to be an insured under Plaintiff National Interstate's insurance policy pursuant to Illinois public policy and statutory law. d/e 55, p. 6.

The plain language of the insurance policy provides coverage to the "Insured," "Named Insured," and "Rentee," that is, Defendants US Choice, Urgent Rent-A-Car, and Rambo, respectively.  d/e 52, ¶ 40; Ex. 2, pp. 11–12, 47; see Selective Ins. Co., 845 F.3d at 267 (court should first look at the plain and ordinary meaning of contract language).  Indeed, Defendant Frazier is not an "insured" by the plain language of the insurance policy. However, Illinois public policy and Illinois law requires an omnibus permissive user clause to be read into Plaintiff National Interstate's insurance policy to Defendants US Choice and Urgent Rent-A-Car. See Hobbs, 823 N.E.2d at 564 (plain language of an insurance policy enforced unless it violates public policy).

Illinois requires mandatory liability insurance coverage.  The Illinois Vehicle Code includes the Illinois Safety and Family Financial Responsibility Law, which mandates that all motor vehicles operated on public roads be covered by liability insurance. 625 5/7-601(a) ("No person shall operate, register or maintain registration of, and no owner shall permit another person to operate, register or maintain registration of, a motor vehicle designed to be used on a public highway in this State unless the

motor vehicle is covered by a liability insurance policy.").   Any motor vehicle must be covered by liability insurance, so, whether the operator is personally covered by liability insurance is irrelevant.  For most vehicles, policy limits must be at least $25,000 per person or $50,000 per accident for personal injury or death and at least $20,000 for property damage.  625 ILCS 5/7–601(a), 7–203.

Section 7-317(b)(2) requires that the vehicle liability insurance "[s]hall insure the person named therein and any other person using or responsible for the use of such motor vehicle or vehicles **with the express or implied permission of the insured**[.]"  625 ILCS 5/7-317(b)(2) (emphasis added).  Such a provision that provides automobile liability coverage for any person driving the insured vehicle with the express or implied permission of the insured is commonly referred to as an "omnibus clause."  State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Grp., 695 N.E.2d 848, 850 (Ill. 1998).

In Universal Underwriters, the Illinois Supreme Court held that the Illinois Vehicle Code, specifically at 625 ILCS 7-601(a)(1), and 625 ILCS 7-317, requires vehicles to be covered by an omnibus provision.  695 N.E.2d at 851.  There, the Illinois Supreme Court

Page **16** of **41**

noted that section 7-601 requires vehicles to be covered by a "liability insurance policy," which is defined by section 7-317 as containing an omnibus provision. Id. at 850. Section 7-317 defined the similar term "motor vehicle liability policy" and that such an insurance "[s]hall insure the person named therein and any other person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured." 625 ILCS 5/7-317. Where an omnibus clause is required by statute to be included in motor vehicle liability policies, such a clause must be read into each insurance policy. Progressive Universal Ins. Co. v. Liberty Mut. Fire Ins. Co., 828 N.E.2d 1175, 1180 (Ill. 2005) (citing Universal Underwriters, 695 N.E.2d at 850).

However, certain vehicles are exempt from the requirements of section 7-601(a), including those that are in compliance with other statutes that require insurance in amounts meeting or exceeding those required by section 7-601(a). 625 ILCS 5/7-601(b)(6); Universal Underwriters, 695 N.E.2d at 851 (Illinois Supreme Court holding that this exception applies only if the other statute requires coverage of the type mandated under section 7-601(a)). Relevant here, section 9-101 requires car rental agencies to provide proof of

financial responsibility to the Secretary of State.  625 ILCS 5/9–101.  Financial responsibility may be in the form of a bond, an insurance policy, or a certificate of self-insurance.  625 ILCS 5/9–102.

Here, Defendant Urgent Rent-A-Car owned the Pontiac G6 and rented it to Defendant Rambo.  d/e 52, ¶¶ 12–13.  Complying with the statute, Defendant Urgent Rent-A-Car, as the owner of the rental car Pontiac G6 and an "Additional Named Insured", has provided motor vehicle insurance policy coverage with limits of at least $50,000 per person for bodily injury or death or $100,000 per accident for bodily injury or death and property damage.  See d/e 1, ¶ 22.  Section 9-105 of the Illinois Vehicle Code mandates that the insurance must cover any "customer or against any person operating the motor **vehicle with the customer's express or implied consent**."  625 ILCS 5/9–105 (emphasis added).  That coverage then must be read into Plaintiff National Interstate's insurance policy.  Universal Underwriters, 695 N.E.2d at 850.

Further, Plaintiff National Interstate's insurance policy itself states that "[a]ny provision of this Coverage Form that conflict[s] with any state's [sic] statutes, procedures, or rules, is hereby

amended to conform to that statute, procedure, or rule."  d/e 52,
Ex. 2, p. 43.  As a result, although Plaintiff National Interstate's
insurance policy that provides coverage to Defendant Urgent Rent-
A-Car as an "Additional Named Insured" does not explicitly include
an omnibus permissive user clause, it is read into Plaintiff National
Interstate's insurance policy to be in compliance with Illinois law.
See Hobbs, 823 N.E.2d at 564 (plain language of an insurance
policy enforced unless it violates public policy); see also Am.
Country Ins. Co. v. Wilcoxon, 537 N.E.2d 284, 289 (Ill. 1989) ("A
provision in a bond or policy, mandated by a financial responsibility
law, that conflicts with the law is void and the statute controls.")
(citations omitted).

    Plaintiff National Interstate makes several arguments
regarding the interpretation of section 7-317.  Section 9-105
provides that an insurance policy held by a rental car agency shall
serve as proof of financial responsibility providing that "the
insurance carrier will pay any judgment within 30 days after it
becomes final, recovered against the customer or against any
person operating the motor vehicle with the customer's express or
implied consent."  625 ILCS 5/9–105.

"When interpreting a statute, [the Court] begin[s] with the text." Loja v. Main St. Acquisition Corp., 906 F.3d 680, 683 (7th Cir. 2018).  "Statutory words and phrases are given their ordinary meaning." Singh v. Sessions, 898 F.3d 720, 725 (7th Cir. 2018).  "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Brumfield v. City of Chicago, 735 F.3d 619, 628 (7th Cir. 2013).

In reading the statutory language of section 9-105, "customer," while not defined, is most reasonably construed to refer to Defendant Rambo when read in context of section 9-101, which provides that "it is unlawful for the owner of any motor vehicle to engage in the business, or to hold himself out to the public generally as being engaged in the business of renting out such motor vehicle to be operated by the customer . . ." 625 ILCS 5/9-101.  Defendant Urgent Rent-A-Car owned the Pontiac G6.  It was rented to Defendant Rambo, making her the customer, as evidenced by the Vehicle Rental Agreement between Defendant Rambo and Defendant Urgent Rent-A-Car.  See d/e 52, Ex. 10.  As a result, whether Plaintiff National Interstate's insurance policy extends to

Defendant Frazier depends on whether Defendant Frazier obtained

Defendant Rambo's express or implied consent to operate the

Pontiac G6.

Moreover, the comment to section 9-105 supports this

interpretation:

> It should be noted that the condition of the policy
> required the insurance carrier to pay any judgment
> within thirty days after it became final, rendered against
> the owner or the customer, or against any person
> operating the motor vehicle with the customer's express
> or implied consent. That provision made the insurance
> carrier [Defendant Urgent Rent-A-Car] liable for the acts
> of the lessee [Defendant Rambo] and those operating the
> motor vehicle with the express or implied consent of the
> lessee [Defendant Rambo], **regardless of whether or not
> such operation was with the consent of the owner
> [Defendant Urgent Rent-A-Car].**

625 ILCS 5/9-105 cmt. (emphasis added).

Defendant Rambo testified that she did not give Defendant

Frazier permission to take the rental Pontiac G6, while Defendant

Frazier testified that Defendant Rambo gave her permission to take

the Pontiac G6.  See d/e 52, Ex. 11, pp. 34–35, ln. 23–1; d/e 52,

Ex. 9, p. 13, ln. 2–4, 16–25, p. 21, ln. 10–23.  A genuine dispute of

material fact remains whether Defendant Frazier operated the

Pontiac G6 with the consent, express or implied, of Defendant Rambo.

Furthermore, the initial permission rule applies. The initial permission rule provides that once the named insured of an insurance policy containing an omnibus clause has given permission to another to use the automobile, any subsequent driver is covered under the policy as long as that driver does not engage in theft or tortious conversion to gain access to the automobile. Maryland Cas. Co. v. Iowa Nat'l Mut. Ins. Co., 297 N.E.2d 163, 168 (Ill. 1973). Section 9-105 incorporates the initial permission rule by indicating that the insurance must cover any "customer or against any person operating the motor vehicle with the **customer's express or implied consent.**" 625 ILCS 5/9–105 (emphasis added). The rule applies "even where it cannot be established that the initial permittee granted permission to the third person driving the vehicle." Harry W. Kuhn, Inc. v. State Farm Mut. Auto. Ins. Co., 559 N.E.2d 45, 49 (Ill. Appt. Ct. 1990).

In Maryland Cas. Co., the insurance company issued a policy to Robert Smythe, the named insured, containing an omnibus clause extending liability coverage to "any other person using such

Page **22** of **41**

automobile, with the permission of the named insured." 297 N.E.2d at 168. Smythe's son had permission to drive the insured vehicle but had been instructed by his parents not to permit anyone else to operate the vehicle. Id. at 165. Smythe allowed a friend, Horton, to drive the vehicle. Id. Horton subsequently was involved in an accident while driving the vehicle. Id. The Illinois Supreme Court, applying the initial permission rule, held that Horton was covered under the Smythe insurance policy. Id. at 168.

Here, Plaintiff National Interstate issued an insurance policy to Defendants US Choice ("Named Insured"), Urgent Rent-A-Car ("Additional Named Insured"), and Rambo ("Rentee"). Defendant Urgent Rent-A-Car, as owner of the Pontiac G6 and an Additional Named Insured under Plaintiff National Interstate's insurance policy, gave permission to Defendant Rambo to drive the Pontiac G6, as evidenced by the Vehicle Rental Agreement. Section 9-105 implicates the initial permission rule. 625 ILCS 5/9–105 (insurance must cover any "customer or against any person operating the motor vehicle with the **customer's express or implied consent.**") (emphasis added). As a result, any subsequent

driver to Defendant Rambo is covered under Plaintiff National Interstate's insurance policy.

Pursuant to the initial permission rule, Plaintiff National Interstate's insurance policy extended liability coverage of the rental vehicle to Defendant Frazier.  However, whether Defendant Frazier engaged in theft or conversion to obtain the Pontiac G6, is a question of fact left for the jury.  As a result, Plaintiff National Interstate's motion for summary judgment is denied as it relates to Defendant Frazier being an "insured" under Plaintiff National Interstate's insurance policy.

### B. The Vehicle Rental Agreement Between Defendant Urgent Rent-A-Car and Defendant Rambo Cannot Limit Coverage Provided by the Omnibus Clause in Section 9-105.

Next, Plaintiff National Interstate argues that the Vehicle Rental Agreement between Defendant Urgent Rent-A-Car and Defendant Rambo contractually limited the driving of the Pontiac G6 to only Defendant Rambo, and thus, Defendant Frazier is not covered under the insurance policy.  The Vehicle Rental Agreement between Defendant Urgent Rent-A-Car and Defendant Rambo states

that the "vehicle may only be driven by renter listed on [the] contract."  d/e 52, Ex. 10.

Illinois courts have held that contractual limitations will not be voided unless the limitations are against the settled public policy of the state.  See, e.g., First Fin. Ins. Co., v. Purolator Sec., Inc., 388 N.E.2d 17 (Ill. 1979).  This power to void, however, should be used sparingly and only if the contract is "clearly contrary to what the constitution, the statutes or the decisions of the courts have declared to be the public policy or unless they be manifestly injurious to the public welfare."  First Nat'l Bank of Springfield v. Malpractice Rsch., Inc., 688 N.E.2d 1179, 1182 (Ill. 1997) (quotations and citations omitted).

Plaintiff National Interstate cites to TIG Ins. Co. v. Smith in support of its contention that Plaintiff does not owe a duty to defend and indemnify Defendant Frazier.  In TIG, the Northern District of Illinois, applying Illinois law, found that a "rental agency's liability does not extend to every accident involving one of its vehicles; a rental agency may contract to limit coverage."  243 F. Supp. 2d 782, 785 (N.D. Ill. Feb. 3, 2003).  There, Lorraine Jenkins rented a car from National Auto Credit, Inc. ("NAC").  Id. at 783.  NAC chose to

provide a certificate of self insurance instead of providing a bond or insurance policy as proof of financial responsibility.  Id.  The rental agreement stated: "All additional drivers, except renter's spouse, must be listed."  Id.  The rental agreement further stated:

> If required by the financial responsibility laws of the state in which this agreement was executed, the company shall settle or defend up to the minimum limits required for any one rental vehicle per occurrence, as it considers appropriate, any claim or suit for bodily injury and/or property damage arising out of the **authorized use of this vehicle by the renter, renter's spouse or listed additional licensed driver.**

Id. (emphasis added).

Jenkins did not list her son Jon Bennett as an additional licensed driver on the rental agreement.  Id.  Bennett was driving the rental car when he got into a car accident, killing Bennett and injuring passengers Darrell Smith and Aaron Simpson.  Id.  Smith and Simpson subsequently filed a tort action against the Bennett estate.  Id.  When Smith and Simpson made demands on NAC in excess of $100,000, NAC tendered its defense to its excess policy insurer, TIG Insurance Company ("TIG").  Id. at 783–84.

TIG argued that the renter exclusion clause in the rental agreement was valid, Bennett was not an authorized driver, and

therefore Bennett was not provided insurance coverage.  Id. at 784.
Smith and Simpson argued that the authorized use provision in the
rental agreement was against public policy, and, therefore, the
insurer was liable for any damages.  Id.  The court found that the
contractual agreement between the parties limiting authorized
drivers to those listed in the rental agreement was valid,
enforceable, and did not frustrate public policy.  Id. at 785.
Furthermore, the insurer had an "interest in protecting its property
and knowing in advance its liability exposure."  Id.

However, TIG concerned a car rental company carrying self-
insurance, as opposed to Defendant Urgent Rent-A-Car's election of
carrying an insurance policy with Plaintiff National Interstate as
proof of financial responsibility.  If a car rental agency elects to give
proof of financial responsibility through an insurance policy, it
must be issued "in a form to be prescribed by the Secretary as
provided in Section 9-105."  625 ILCS 5/9-102.  As discussed
above, Section 9-105 contains an omnibus clause that states that
the insurance must cover any "customer or against any person
operating the motor vehicle with the **customer's express or
implied consent.**"  625 ILCS 5/9–105 (emphasis added); see supra

Section V.A.  If a car rental agency elects to give proof of financial responsibility through a certificate of self-insurance, however, no such omnibus clause language exists in the statute.  625 ILCS 5/9-102 ("Proof of financial responsibility when required under Section 9-101 may be given by . . . filing with the Secretary of State: [a] certificate of self insurance issued by the Director.").

However, in <u>Am. Country Ins. Co. v. Wilcoxon</u>, a more pertinent case, a taxicab insurer sought a declaratory judgment that the insurer did not have a duty to indemnify a pedestrian struck by a taxicab.  537 N.E.2d 284, 285 (Ill. 1989).  There, the insurer issued a surety bond to a taxi company pursuant to the Illinois financial responsibility statute governing taxicab owners. <u>Id.</u>  The relevant statute at section 8-104, containing omnibus language, stated that the required bond shall provide for the payment of each judgment rendered against the owner "resulting from the negligence of such owner, his agent, or any person operating the motor vehicle with his **express or implied consent.**" <u>Id.</u> at 288 (emphasis added).  The taxicab company leased one of its cabs to White, and the lease stated that he was "[t]o be the sole driver of the leased vehicle." <u>Id.</u> at 286.  White "gave possession" of

the leased cab to Overstreet, who, while driving the cab, struck and injured a pedestrian.  Id.

The Wilcoxon court found that the initial permission rule was based upon the theory that the insurance contract is not only intended to benefit the insured, but also the public.  Id. at 289. Further, the court noted that when a statute exists to protect the public, the statute cannot be rewritten through a contract that conflicts with a statute.  Id.  Wilcoxon is distinguishable from TIG because, while both cases addressed the scope of contractual limitations, TIG implicated a statute **without** omnibus language, section 9-102, while Wilcoxon implicated a statute **with** omnibus language, section 8-104.  The TIG court found that the contractual limitation should be upheld and did not conflict with public policy, but the Wilcoxon court found that the contractual limitation conflicted with the purposes of the statutory omnibus language in section 8-104.

Although Wilcoxon concerned section 8-104 of Illinois' financial responsibility law governing taxicab owners, here, section 9-105, contains analogous language regarding omnibus coverage. 625 ILCS 5/9–105 (mandating that the insurance must cover any

"customer or against any person operating the motor vehicle with the customer's express or implied consent"). Moreover, the purpose of section 9-105 is also to protect the public. See Safeway Ins. Co. v. Hadary, 48 N.E.3d 732, 737 (Ill. App. Ct. 2016) ("The financial responsibility statute affecting car rental agencies is intended to protect the public from negligent drivers of rented vehicles and is intended to provide some, but not necessarily total, protection.").

Here, the Vehicle Rental Agreement between Defendant Urgent Rent-A-Car and Defendant Rambo states that the "vehicle may only be driven by renter listed on [the] contract." d/e 52, Ex. 10. This exclusive driver language is akin to the language contained in the taxicab lease in Wilcoxon. 537 N.E.2d at 286 (lease stating that lease was "[t]o be the sole driver of the leased vehicle."). Like in Wilcoxon, where the exclusive driver language conflicted with the statutory purpose of the omnibus language in section 8-104, the language in the instant Vehicle Rental Agreement requiring Defendant Rambo to be the sole driver of the Pontiac G6 cannot restrict the application of section 9-105, which contains an analogous omnibus clause. See 625 ILCS 5/9–105 (mandating that the insurance must cover any "customer or against any person

Page **30** of **41**

operating the motor vehicle with the customer's **express or implied consent**") (emphasis added).  Once the named insured of an insurance policy containing an omnibus clause has given permission to use the car, any subsequent driver is covered as long so that driver did not engage in theft or tortious conversion to gain access to the car.   See <u>Maryland Cas.</u>, 297 N.E.2d at 168.  A lease that attempts to limit coverage to less than that required by the statute is, therefore, of no effect.  See <u>Wilcoxon</u>, 537 N.E.2d at 289.  Plaintiff National Interstate cannot circumvent that initial permission rule.  As a result, Plaintiff National Interstate's motion for summary judgment is denied as it relates to the contractual limitations of the Vehicle Rental Agreement.

### C. There Is a Genuine Dispute of Material Fact Whether Defendant Frazier Committed a Deliberate Crime to Exclude Her From Plaintiff National Interstate's Insurance Policy.

Plaintiff National Interstate also argues that because Defendant Frazier committed deliberate crimes, she is excluded from the insurance policy.  Defendants Moore and Thompson argue that Defendant Frazier was not intending to harm a third party when the automobile collision occurred, so the exclusion does not

apply.  If an insurer relies on an exclusionary clause to deny

coverage, it must be clear and free from doubt that the exclusionary

clause applies.  Ill. State Bar. Ass. Mut. Ins. Co. v. Leighton Legal

Grp., LLC, 103 N.E.3d 1087, 1093 (Ill. App. Ct. 2018).  The

Business Auto Coverage Form Endorsement—Illinois contains

certain exclusions to Plaintiff National Interstate's insurance policy.

Specifically, it excludes coverage for "bodily injury or property

damage while a covered auto is being used in any deliberate, illicit

trade or transportation, or deliberate crime or deliberate illegal act

of any kind."  d/e 52, Ex. 2, p. 48.

Plaintiff National Interstate argues that Country Mut. Ins. Co.

v. Dahms is controlling.  58 N.E.3d 118 (Ill. App. Ct. 2016).  In

Dahms, a homeowner's insurer sought declaratory judgment that

the insurer did not have a duty to defend or indemnify its insured

in an underlying tort lawsuit.  Id. at 121.  There, Dahm's

homeowner's insurance policy stated that the insurance company

would provide a defense "[i]f a claim is made or a suit is brought

against an 'insured' for damages because of 'bodily injury' or

'property damage' caused by an 'occurrence' to which this coverage

applies." Id. at 124.  The policy also contained a criminal-acts
exclusion to its liability coverage for:

> 'Bodily Injury' or 'property damage' arising from any
> criminal act. Criminal act means any act or omission
> which is criminal in nature or for which a penal statute
> or ordinance permits or requires any term of
> imprisonment or sentence or public service duties. This
> exclusion applies regardless of whether any 'insured' is
> actually charged with or convicted of a crime and
> regardless of whether any 'insured' subjectively intended
> the 'bodily injury' or 'property damage' for which a claim
> is made.

Id.

The plaintiff in the tort lawsuit against Dahms brought suit
for negligence and battery.  Id. at 121. After the tort action against
Dahms was filed, Dahms was convicted of aggravated battery
stemming from the same events.  Id.  The court held that, before
Dahms was convicted of aggravated battery, the insurer could not
rely on the criminal-acts exclusion to deny coverage.  Id. at 132.
However, the insurer's duty to defend ended when Dahms was
convicted in his criminal trial because a jury had found, beyond a
reasonable doubt, that Dahms had, in fact, committed a crime.  Id.
at 133.

However, in Dahms, the insurance policy contained an
exclusion for a "criminal act[]," while the insurance policy here

contains an exclusion for a "**deliberate** crime or **deliberate** illegal act of any kind." d/e 52, Ex. 2, p. 48 (emphasis added). When the words of a contract are clear and unambiguous, they must be given their plain, ordinary, and popular meaning. See Selective Ins., 845 F.3d at 267. The Merriam-Webster Dictionary defines "deliberate" as "characterized by or resulting from careful and thorough consideration" or "characterized by awareness of the consequences." Deliberate, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/deliberate (last visited September 4, 2024). Black's Law Dictionary defines "deliberate" as "[i]ntentional; premeditated; fully considered" or "unimpulsive; slow in deciding." Deliberate, BLACK'S LAW DICTIONARY (12th ed. 2024).

The Merriam-Webster Dictionary defines "intentional" as "done by intention or design." Intentional, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/intentional (last visited September 4, 2024). "Intention" is defined as "what one intends to do or bring about" or "a determination to act in a certain way." Intention, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/intention (last visited September 4, 2024).

"Intend" is defined as "to have in mind as a purpose or goal" or "to design for a specified use or future." Intend, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/intend (last visited September 4, 2024). Black's Law Dictionary defines "intentional" as "[d]one with the aim of carrying out a given act; performed or brought about purposely by someone who is aware and sane." Intentional, BLACK'S LAW DICTIONARY (12th ed. 2024).

Since "deliberate" and "intentional" are functionally synonyms, although the Plaintiff National Interstate's insurance policy uses the word "deliberate" in its exclusionary clause, the clause operates as an intentional act exclusion. Id. Generally, Illinois courts interpret intentional act exclusions to deny coverage where the insured has (1) intended to act **and** (2) specifically intended to harm a third party. State Farm Fire & Casualty Co. v. Leverton, 732 N.E.2d 1094, 1098 (Ill. App. Ct. 2000) (emphasis added).

While Defendant Frazier pled guilty to several crimes for the accident, none of those crimes contains both an element of intent to act **and** intent to harm. See d/e 52, Ex. 12. Specifically, Defendant Frazier pled guilty to one count of Reckless Homicide in violation of 720 ILCS 5/9-3(a), which provides that "[a] person commits

reckless homicide if he or she **unintentionally** kills an individual while driving a vehicle and using an incline in a roadway, such as a railroad crossing, bridge approach, or hill, to cause the vehicle to become airborne."  720 ILCS 5/9-3(a) (emphasis added).

Defendant Frazier also pled guilty to one count of Driving While License Revoked in violation of 625 ILCS 5/6-303(a), which occurs if an individual:

> drives or is in actual physical control of a motor vehicle on any highway of this State at a time when such person's driver's license, permit, or privilege to do so or the privilege to obtain a driver's license or permit is revoked or suspended as provided by this Code or the law of another state, except as may be specifically allowed by a judicial driving permit issued prior to January 1, 2009, monitoring device driving permit, family financial responsibility driving permit, probationary license to drive, or a restricted driving permit issued pursuant to this Code or under the law of another state[.]

625 ILCS 5/6-303(a).  Driving while license revoked is a strict liability offense.  See People v. Jackson, 983 N.E.2d 1027, 1033 (Ill. 2013) ("It is well settled that the only elements necessary to prove the offense of driving while license suspended or revoked are (1) the act of driving a motor vehicle on the highways of this State, and (2) the fact of the revocation of the driver's license or privilege.") (internal quotations and citations omitted).

Additionally, Defendant Frazier pled guilty to one count of Reckless Conduct in violation of 720 ILCS 5/12-5(a), which provides that "[a] person commits reckless conduct when he or she, by any means lawful or unlawful, **recklessly** performs an act or acts that: (1) cause bodily harm to or endanger the safety of another person; or (2) cause great bodily harm or permanent disability or disfigurement to another person." 720 ILCS 5/12-5 (emphasis added).

Lastly, Defendant Frazier pled guilty to one count of Aggravated Reckless Driving in violation of 625 ILCS 5/11-503(a)(1), one count of Aggravated Reckless Driving in violation of 625 ILCS 5/11-503(a)(2), and one count of Aggravated Reckless Driving in violation of 625 ILCS 5/11-204.1(a)(1). A person commits aggravated reckless driving under 62 ILCS 5/11-503(a)(1) and (2) if he "(1) drives any vehicle with a **willful or wanton disregard** for the safety of persons or property; or (2) **knowingly** drives a vehicle and uses an incline in a roadway, such as a railroad crossing, bridge approach, or hill, to cause the vehicle to become airborne" and the violation "causes bodily harm to a child[]" or "causes great bodily harm or permanent disability or disfigurement to a child[]" 625

ILCS 5/11-503(a)(1), (2) (emphasis added); 625 ILCS 5/11-503(b-1), (c).

Meanwhile, any driver or operator of a motor vehicle violates 625 ILCS 5/11-204.1(a)(1) "who flees or attempts to elude a peace officer, after being given a visual or audible signal by a peace officer in the manner prescribed in subsection (a) of Section 11-204 of this Code, and such flight or attempt to elude: (1) is at a rate of speed at least 21 miles per hour over the legal speed limit[.]"  625 ILCS 5/11-204.1(a)(1).

Because the statutory language in the crimes that Defendant Frazier pled guilty to do not mention an intent to harm, it is not clear that these convictions preclude Defendant Frazier from coverage in the insurance policy.  The exclusion provision should also not be read in isolation but must be read with reference to the facts of the case at hand.  Lincoln Logan Mut. Ins. Co. v. Fornshell, 722 N.E.2d 239, 243 (Ill. App. Ct. 1999).  Here, Defendant Frazier testified that she did not see the Richie vehicle prior to colliding with it.  d/e 52, Ex. 9, p. 38, ln. 11–13.  A reasonable trier of fact could find that Defendant Frazier's failure to see the vehicle was

indicative that she did not mean to collide with the vehicle and that she did not intend to harm a third party.

Moreover, Defendants Thompson and Moore, in The Richie Lawsuit, allege that Frazier "at all times relevant hereto, and during such time as she operated a motor vehicle . . . was intoxicated." d/e 52, Ex. 13, ¶ 3.  Defendants Thompson and Moore further allege that Frazier "operated her motor vehicle while intoxicated, in violation of 625 ILCS 5/11-501(A)(4)."  Id. at ¶ 19(h).  However, the state dismissed that charge and Defendant Frazier was not found guilty of intoxicated driving under 625 ILCS 5/11-501(A)(4) in her criminal case, so Defendants Thompson and Moore's allegation that Defendant Frazier was intoxicated and therefore committed a deliberate illegal act remains a material issue of fact.

As a result, Plaintiff National Interstate's motion for summary judgment is denied as it relates to the deliberate crime exclusion in the insurance policy.

### D. There Is a Genuine Dispute of Material Fact Whether Plaintiff National Interstate's Excess Policy Provides Coverage to Defendant Frazier.

Lastly, Plaintiff National Interstate argues that, because its underlying insurance policy does not apply, Plaintiff's excess policy

also does not provide coverage to Defendant Frazier.  Plaintiff National Interstate's Commercial Excess Liability Policy states that it "will follow the same provisions, exclusions and limitations that are contained in the applicable 'controlling the underlying insurance', unless otherwise directed by this insurance."  d/e 52, Ex. 14, p. 10.  The "underlying insurance" refers to Plaintiff National Interstate's insurance policy regarding Business Auto Coverage.  As discussed earlier, there is a genuine dispute of material fact regarding whether Defendant Frazier is an insured under Plaintiff National Interstate's insurance policy.  <u>See</u> supra Section V.A.  There is also a genuine dispute of material fact whether the deliberate crime exclusion applies to Defendant Frazier.  <u>See</u> supra Section V.C.  Because the applicability of the Commercial Excess Liability Policy depends on whether Defendant Frazier is an insured or falls within the deliberate crime exclusion under National Interstate's underlying insurance policy, there is a genuine dispute of material fact whether Defendant Frazier is an insured under the Excess Policy.  As a result, Plaintiff National Interstate's motion for summary judgment is denied as it relates to whether the Excess Policy provides coverage to Defendant Frazier.

## VI.   CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment (d/e 52) is DENIED.  Plaintiff's unopposed Motion to Strike Agreed/Unopposed Motion to Strike the Current Trial Date and Set a Case Management Conference (d/e 58) is GRANTED.  The current October 7, 2024 Final Pretrial Conference and October 22, 2024 Jury Trial dates are VACATED.  The Court SETS a status conference for Tuesday, September 24, 2024, at 10:00 a.m. via videoconference to discuss scheduling for final pretrial conference and jury trial dates.

**IT IS SO ORDERED.**
**ENTERED: September 6, 2024.**
**FOR THE COURT.**

*/s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**